NATHANIEL ABBOTT & another *vs.* NEHEMIAH M. ANDREWS.
NEHEMIAH M. ANDREWS *vs.* NATHANIEL ABBOTT.
SAME *vs.* SAME & another.

Essex. Nov. 6, 1880. — Jan. 10, 1881. AMES & ENDICOTT, JJ., absent.

In an action for wages the plaintiff claimed $24 a week. The defendant testified, without objection, that the plaintiff was asked, before the action was brought, if he would settle by the defendant's books; that he replied that he would not; that he had been having $18 a week; that the defendant said the amount was $15, and if the plaintiff would not settle for that, the defendant would sue him for overdrawing his salary. The defendant was then allowed to testify, against the plaintiff's objection, that the plaintiff said he was willing to settle if the defendant would call the salary $18 a week; that the difference would be small, a trifle in the plaintiff's favor. *Held*, that this evidence was admissible.

THREE ACTIONS OF CONTRACT. The first was to recover a balance alleged to be due the plaintiffs by reason of the defendant overdrawing his account while in the plaintiffs' service. The second and third were to recover a balance alleged to be due the plaintiff for services rendered the defendants as surviving members of the firm of M. C. Reynolds & Co.; and the second action contained counts on certain promissory notes against the defendant as surviving member of said firm. The three actions were tried together in the Superior Court, before *Brigham*, C. J., who allowed a bill of exceptions in substance as follows:

Andrews, the plaintiff in the last two actions, offered evidence tending to show that, on February 19, 1872, he was employed by the firm of M. C. Reynolds & Co., consisting at that time of M. C. Reynolds and the defendant Abbott, at an agreed price of $18 per week; that, on May 1, 1872, his wages were increased to $24 per week, and continued at that price until August 1, 1875, when they were reduced to the former price of $18, and remained so until October 22, 1877, when he left their employ; that on March 20, 1878, Moses C. Reynolds, the senior member of the firm, died; that, in his first action, there was a balance in his favor for services, after deducting payments made by said firm, of $477.47; and that in his second action there was a balance in his favor for services, after deducting payments made by the firm, of $87.60.

The defendants offered evidence tending to show that the wages of Andrews were $18 per week from February 19, 1872, until August 1, 1875; that his wages were reduced from that date to $15 per week, and so remained until he left their employ, on October 22, 1877; that the notes declared on had been paid; and, to prove payment, relied upon the fact that, in conversations between the parties in relation to settlement, Andrews did not mention any claim that the defendants owed him the amount of any promissory notes.

Henry E. Reynolds, one of the defendants, testified that the plaintiff called at their counting-room in February 1878, for the purpose of settling with them; that the plaintiff was asked if he would settle by their books, to which he replied that he would not; that their books were not correct; that the salary was not correct; that he had been having $18 per week; that Abbott replied, " No, I reduced your salary in August 1875 to $15 per week," which the plaintiff denied; and that Abbott then said, that he would not settle except by the firm's books, and if the plaintiff would not settle by them, they should sue him.

The defendants further offered in evidence the following statement made by the plaintiff, against his objection and exception: " Andrews said, I am willing to settle if you will call my salary $18 per week up to the time I left; there will not be much difference any way, a trifle in my favor, but I am willing on those terms to pass receipts and call it square; " that Abbott

replied that he would not do it, and unless settled by their books they would sue at once.

The jury returned a verdict for the plaintiffs in the first case for the plaintiff in the second case; and for the defendants in the third case. Andrews alleged exceptions to the admission of the evidence objected to.

*S. B. Ives, Jr. & C. Sewall*, for Andrews.

*C. P. Thompson, contra.*

LORD, J. It is common learning, that if a party, for the purpose of buying his peace, or effecting a compromise with his adversary, offers to discharge him upon receiving an amount less than his due, no advantage can be taken of such offer if not accepted, and evidence of it upon a subsequent trial is incompetent.

The question in this case is, Is the evidence offered and admitted of such character? We are of opinion that it is not. It is true that the bill of exceptions finds that the plaintiff Andrews offered evidence tending to show that his compensation was to be $24 per week; and that the evidence objected to and admitted was Andrews's declaration that he was willing to accept in settlement $18 per week. If that were all that appeared, the evidence would have been clearly incompetent, as being only evidence of an offer to take less than his claim, and in compromise of it. But that is by no means all; nor was it presented to the presiding judge as that question; nor could it be, upon the facts as reported. True, the plaintiff now contends that he was to be paid $24 per week; and this evidence was tendered to show, among other things, that before suit brought he had never claimed $24 per week, but that the extent of his claim was $18 per week, and that when he suggested a settlement at $18 per week, neither he nor the other party understood that he was offering to accept less than his due, but both parties understood that, if his offer should be accepted, it would be the other party, and not he, that made concession to arrive at that compromise. This is quite apparent upon examining the evidence tendered. As reported in the bill of exceptions, it is thus: "The plaintiff was asked if he would settle by their books, to which he replied that he would not; that their books were not correct; that the salary was not correct; that he had been having $18 per week :

that Abbott replied, ' No, I reduced your salary in August 1875 to $15 per week,' which the plaintiff denied;" and then comes the part objected to: "Andrews said, I am willing to settle if you will call my salary $18 per week up to the time I left; there will not be much difference any way, a trifle in my favor, but I am willing on those terms to pass receipts and call it square." Clearly, there is nothing in the nature of concession for the sake of peace in this conversation; there is no abatement of any part of the claim as he then made it, but he is claiming to the full extent all that he ever claimed before the trial, and is appealing to the other party to yield something in his favor. At first blush, indeed, it would seem a little singular that the defendants should put in evidence, against the objection of the plaintiff, the fact that he claimed a larger amount than they admitted to be due, to wit, $18 per week instead of $15. It is to be remembered, however, that three suits were tried together, and that in one of those suits he made claim against the defendants to a large amount upon notes and due-bills upon which the defendants denied their liability; and it is contended that this evidence was both competent and important as tending to show that, at the time he made the declarations, he could not have had a valid claim of many hundred dollars against the defendant, and that although upon the question of salary the declarations offered in evidence were in favor of the party making them, yet upon the great and important issues in the case they left a decided implication against the validity of his other and larger claims. However this may be, inasmuch as no objection is made to the evidence except that it was an offer of compromise upon the subject of salary, we cannot regard its bearing in any other light, and it was clearly not objectionable as an offer of compromise.

*Exceptions overruled.*